# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.P., a minor, by and through JOHN and CLAUDETTE PERUSSE,<br><br>                                          Plaintiff,<br><br>         vs.<br><br>POWAY UNIFIED SCHOOL DISTRICT,<br><br>                                          Defendant. | CASE NO. 09 CV 1627 JLS (NLS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 12.) |

Presently before the Court is Plaintiffs' motion for summary judgment and request to submit additional evidence.[1] (Doc. No. 12.) Also before the Court are the District's oppositions and Plaintiffs' replies. (Doc. Nos. 14, 15, 16.) For the reasons stated below, the Court **HEREBY DENIES** Plaintiffs' request to submit additional evidence, **FINDS** in favor of the District on all issues and **DENIES** Plaintiffs' motion for summary judgment.

## BACKGROUND

The facts are not in dispute. Student was first assessed and identified as a student eligible for special education in second grade, in 2005, while enrolled at a District school. (*See* Administrative Record ("AR") at 1160-65.) On May 18, 2005, an initial Individualized

---

[1] As stated below, this action was commenced in this Court pursuant to 20 U.S.C. § 1415(i)(3)(A). While the Complaint asserts that this action is an "appeal" of an administrative decision, the review is a modified *de novo* standard, based on the administrative record. 20 U.S.C. §1415(i)(2)(C). Thus, though the present motion is a "motion for summary judgment," the Court does not use that legal standard.

Educational Program ("IEP") team meeting was held for Student. (*See* AR at 1173.) At this meeting, the team reviewed assessments and reports administered by Erin Stabeck, a speech and language pathologist, and Berkley Doucette, a school psychologist. (*Id.*; *see also id.* 1160-63, 1178-82.) A year later, in May 2006, the IEP team met again and created an IEP, which Student's parents consented to and was thereafter implemented. (*See id.* at 1314, 1330.)

The IEP at issue in the present case was developed in May 2007, when the team met again and reviewed Student's progress on goals and present levels of performance. (*See* AR at 1342-59.) On May 8, 2007, Student's mother consented to the District placement and IEP. (*Id.*) Over the summer, however, Student's parents retained educational psychologist Dr. Sara Frampton. On August 9, 2007, the District received a letter giving notice that Dr. Frampton had been retained and that Student's parents were revoking parental consent to the May 8, 2007 IEP. (*See id.* at 1365.) The letter also indicated that Student's parents "intended to remove [Student] from the Poway Unified School District, make a unilateral placement in a nonpublic school, and seek reimbursement from the district." (*Id.*)

On September 6, 2007, Student's IEP team, Student's parents, and Dr. Frampton met to discuss the parent's concerns. (*See* AR at 1370-74.) The team members offered to conduct various assessments, which Dr. Frampton declined. (*Id.* at 1372-73.) The District thereafter made several attempts to obtain Student's parent's consent to reassess Student. (*See id.* at 1380, 1382, 1383, 1385.) On March 12, 2008, Student's parents returned the signed evaluation plan and marked in the box "yes" acknowledging, "all areas of suspected disability are addressed in this plan," and wrote in handwriting "To the best of my Knowledge." (*See id.* at 1387-89.) The District thereafter conducted various assessments, though the assessment plan did not include an assessment by an audiologist.

On June 5, 2008, Student's IEP team met again to discuss the assessment reports. (*See* AR at 1234-57.) The team, however, was unable to complete the IEP and rescheduled the meeting, making a tentative placement offer at a District school pending the completion of the IEP team meeting. (*Id.* at 1252-57.) The IEP team, Student's parents, and Dr. Frampton reconvened on September 3, 2008 to complete the IEP process and finalize Student's free appropriate public

education ("FAPE"). (*See id.* at 1258-65.) During this meeting, Dr. Frampton requested that the District conduct an audiological assessment, but the District refused because it felt that its prior evaluations were sufficient.[2] (*See id.* at 592-93, 821-23.) Student's parents refused to consent to the IEP. (*Id.* at 1264.)

On February 17, 2009, Plaintiffs filed for a due process hearing with the Office of Administrative Hearings ("OAH") against the District, contending that the District failed to offer a FAPE under the Individuals with Disabilities Education Act ("IDEA") for the 2007-2008 and 2008-2009 school year. (AR at 916-17.) The Notice of Due Process alleged that a FAPE was denied due to "[l]ack of appropriate assessment in the areas of auditory processing which resulted in a failure to properly identify [Student's] needs and an . . . [i]nappropriate placement and program due to the failure to meet his needs." (*Id.* at 916.) The due process hearing took place over a period of five days, beginning on May 26, 2009 and concluding on June 3, 2009. (*See id.* at 880.)

On July 10, 2009, the ALJ issued its Decision, finding in favor of the District on all issues. (*See* AR at 901.) Plaintiffs filed the present Complaint in this Court on June 27, 2009 pursuant to 20 U.S.C. § 1415(i)(3)(A). (Doc. No. 1.) The District filed its Answer on August 17, 2009. (Doc. No. 4.) Plaintiffs filed the present motion for summary judgment and complete administrative record on February 26, 2010. (Doc. Nos. 12, 13.) Plaintiffs also filed a request to supplement the administrative record on that same date. (Doc. No. 12, Ex. 1.) The District filed its response in opposition to both the motion for summary judgment and request to supplement the administrative record on March 19, 2010 (Doc. Nos. 14, 15.) Plaintiffs filed a reply to both the motion and request on April 2, 2010. (Doc. No. 16.) A hearing on the matter was held before this Court on Monday, May 17, 2010.

**LEGAL STANDARDS**

**I.      Standard of Review**

---

[2] It is unclear from the administrative record when Dr. Frampton and/or Student's parents requested the audiological assessment—the September 2007, June 2008 or September 2008 IEP meeting—but it was determined at oral argument that the audiological assessment was not requested until September 2008. (*See also* AR at 1262, 315-20.)

- 3 -                                                                                          09cv1627

1      This Court has jurisdiction of the matter pursuant to 20 U.S.C. § 1415(i)(3)(A). In such an action, "the court . . . (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* §1415(i)(2)(C).

The district court reviews the administrative decision under a modified *de novo* standard. *See Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-73 (9th Cir. 1993). "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). The reviewing court must give "due weight" to the administrative proceedings. *Id.*; *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891-92 (9th Cir. 1995). However, how much deference is afforded the administrative decision is for the discretion of the court. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). Deference is particularly warranted when the hearing officer's findings are "thorough and careful." *See Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).

## II.    Individuals with Disabilities Education Act ("IDEA")

The Individuals with Disabilities Education Act ("IDEA") provides that children with disabilities are entitled to a FAPE. 20 U.S.C. § 1400(d); *see also* Cal. Educ. Code § 56000. A FAPE is defined as special education and related services that are available to the child at no cost to the parent, meet the state educational standards, and conform to the child's individualized educational program ("IEP"). 20 U.S.C. § 1401(8). Federal and California state law require a district to provide a FAPE in the least restrictive environment ("LRE") for each special education student. *See* 20 U.S.C. § 1412(a); 34 C.F.R. § 300.114; Cal. Educ. Code § 56031, 56033.5.

The IDEA, its regulations, and state law provide that a state "agency shall conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child with a disability . . ." 20 U.S.C. § 1414(a)(1)(A); *see also* Cal. Educ. Code § 56320. Parental consent must be obtained before the assessment is conducted. *Id.* § 1414(a)(1)(D)(i)(I). "The initial evaluation . . . must consist of procedures (i) To determine if the

child is a child with a disability . . . ; and (ii) To determine the educational needs of the child." 34 C.F.R. § 300.301(c)(2). These procedures must :

> (1) Use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child.. . . ; (2) Not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child; and (3) Use technically sound instruments . . .

*Id.* § 300.304(b); *see also* Cal. Educ. Code § 56320(e). Further, the evaluation must be "administered by trained and knowledgeable personnel" and "in accordance with any instructions provided by the producer of the assessments." 34 C.F.R. § 300.304(c)(1)(iv), (v); *see also* Cal. Educ. Code §§ 56320(b)(3), (g) and 56322. The child must also be "assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities[.]" 34 C.F.R. § 300.304(c)(4); *see also* Cal. Educ. Code § 56320(f).

After the agency determines that a child is a child with a disability, the agency must reevaluate each child at least once every three years, but not more than once a year, unless agreed by the agency and the child's parents that reevaluation is unnecessary. 34 C.F.R. §300.303; *see also* Cal. Educ. Code § 56381.

In analyzing whether a FAPE was available to a student under the IDEA, its regulations and state law, the court must conduct a two-pronged analysis. *See Rowley*, 458 U.S. at 206-07. The first prong is the "procedural prong" and assesses whether the state complied with the procedures set forth in the IDEA. *Id.*; *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 890 (9th Cir. 2001). The second prong is the "substantive prong" and determines whether "the individualized education program developed through the Act's procedures [was] reasonably calculated to enable the child to receive educational benefits." *Amanda J.,* 267 F.3d at 890 (quoting *Rowley*, 458 U.S. at 206-07).

### REQUEST FOR SUPPLEMENTAL EVIDENCE

Along with their motion for summary judgment, Plaintiffs filed a request to supplement the administrative record. The IDEA provides that the Court shall receive the administrative record and "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). The

Ninth Circuit has adopted the Fifth Circuit's position that "additional" means "supplemental." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1992).

Plaintiffs' additional evidence consists of declarations by Nancy Martin and Elizabeth Allen, the authors and publishers of two tests the District used to assess Student—TAPS-3 and CTOPP. (*See* Request to Supp. AR at 4.) Plaintiffs contend that such declarations are "being introduced to demonstrate that the hearing officer reached a decision that was based on her own unsupported conclusions that the TAPS-3 and CTOPP constitute an assessment of APD [audiological processing deficit]." (Reply to Request at 3.) Plaintiffs further contend that their failure to introduce these witnesses at the hearing was because the District is not required to, and did not, formally plead their defense that the assessments which were performed were sufficient to assess APD. (*See* Request to Supp. AR at 2-4.) Thus, while Plaintiffs expected a defense that the assessments were adequate to develop an offer of placement without an audiologist, Plaintiffs contend that it was unexpected that the District would argue that the tests actually assessed Student's APD. (*Id.*) The Court finds this argument without merit. Plaintiffs should have expected the District to present a defense that the tests performed adequately assessed Student's disability, as this was the central issue as framed by both Plaintiffs and the hearing officer. (*See, e.g.*, AR at 916 (Notice of Due Process) (citing the issue in part as denying a FAPE due to the "[l]ack of appropriate assessment in the areas of auditory processing . . .").) Plaintiffs' argument to the contrary is therefore unreasonable and unavailing.

Furthermore, the Ninth Circuit has offered example of when additional evidence may be admitted:

> The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning the relevant events occurring subsequent to administrative hearing.

*Ojai*, 4 F.3d at 1472-73. While this list is not exhaustive, the central theme is that all admissible additional evidence is evidence not before the hearing officer to no fault of the parties, but rather circumstances beyond their control. The same cannot be said here, where Plaintiffs had ample notice that the District would put on evidence to establish that the tests that were performed

adequately assessed Student's disability, yet failed to provide a full rebuttal.[3]

The Court further agrees that any relevance is outweighed by undue prejudice because the District is unable to cross examine Ms. Martin and Ms. Allen.[4] (*Id.* at 5-6.) For those reasons, the Court, in its discretion, **DENIES** Plaintiffs' request to submit the declarations of Ms. Allen and Ms. Brown as supplemental evidence to the administrative record.

## MOTION FOR SUMMARY JUDGMENT

### I.     Procedural Prong

In analyzing whether a FAPE was available to a student under the IDEA, the Court first evaluates whether the state agency complied with the procedural requirements set forth in the IDEA, its regulations and state law. *See Rowley*, 458 U.S. at 206-07; *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 890 (9th Cir. 2001). Here, Plaintiffs assert that the District did not comply with procedural requirements because it failed to adequately assess Student's APD.[5] (*See*

---

[3] To be sure, the Ninth Circuit has recognized that a district court allowed "additional non-cumulative testimony" while precluding "[w]itnesses who testified during the administrative hearing" because they "should not be allowed to repeat or embellish upon their testimony." *See Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1129 & n.17, *superseded by statute on other grounds as stated in M.L. v. Federal Way Sch. Dist.*, 341 F.3d 1052 (9th Cir. 2003). Here, however, the testimony of Ms. Brown and Ms. Allen is not "non-cumulative testimony." Instead, Ms. Brown and Ms. Allen's testimony seeks to provide further evidence as to why Student's APD was not adequately assessed and merely embellishes prior testimony. For example, Nancy Lazerson already testified that the TAPS-3 was designed "to be used in conjunction with an audiological assessment." (AR at 177; *see also id.* at 1093.) This testimony would only be embellished upon by Ms. Martin's declaration who uses the TAPS-3 manual as support for this same contention. (*See* Martin Decl. at ¶¶ 1, 13, 14, 15.) Moreover, in granting permission to allow non-cumulative supplemental testimony, the district court in *Ms. S.* cited the same four reasons as above for why it would allow supplemental testimony. *See id.* at n.17. Finally, and perhaps most importantly, the Ninth Circuit was not addressing the propriety of the district court's grant of allowing supplement testimony on appeal, but merely noted that the district court had done so. *See id.* at 1129 & n.17.

[4] The district court in *Ms. S.* appeared to allow the plaintiff to call every witness requested as supplemental testimony at a hearing before the district court, not just supplemental declarations not subject to cross examination. *See Ms. S. ex. rel. G.*, 337 F.2d at 1129 & n.17.

[5] In their motion, Plaintiffs make much of the fact that the ALJ defined the procedural issue as: "Did the District deny Student a free appropriate public education (FAPE) by failing to assess Student in the area of auditory processing deficits *through an audiological assessment* from May 8, 2007 through the end of the 2008-2009 school year?" (AR at 880 (emphasis added)). Plaintiffs assert that this was *not* the issue presented in its Request for Due Process, Statement for Prehearing Conference, or in the Prehearing Conference Order, which was prepared by a different ALJ. (*See* MSJ at 4.) Plaintiffs contend that, by inserting "through an audiological assessment" into the issue, this allegedly indicates the ALJ's "unfounded belief" that an audiological assessment is not the only way to assess Student's APD; however, Plaintiffs contend that "only an audiologist can diagnosis an APD."

MSJ at 2.) The analysis turns on whether the tests that were indisputably used to *identify* the APD were sufficient to *assess* the APD under the IDEA.

As stated above, the IDEA and California Education Code provide that a Student must be "assessed in all areas related to the suspected disability." *See* Cal. Educ. Code § 56320(f) and (g). The assessment must "be conducted by persons knowledgeable of that disability. Special attention shall be given to the unique educational needs, including . . . the need for specialized services, materials, and equipment." *Id.* § 56320(g). The tests must also be "administered in accordance with any instructions provided by the producer of the assessments . . ." *Id.* § 56320(b)(3).

Plaintiffs contend that, though the District's use of the TAPS-3 and CTOPP tests were proper, they merely concluded that Student *had* an APD, but that the statutory language of the IDEA and California Education Code require more.[6] First, Plaintiffs contend the TAPS-3 violated minimum assessment requirements because it was not conducted "in accordance with any instructions provided by the producer of the assessments." *See* Cal. Educ. Code § 56320(b)(3); 20 U.S.C. § 1414(b)(3)(A)(v). Nancy Lazerson, who has a M.A. in speech language pathology, testified at the administrative hearing that the TAPS-3 was designed "to be used in conjunction with an audiological assessment."[7] (AR at 177; *see also id.* at 1093.) Therefore, Plaintiff contends that the TAPS-3 test was not administered in compliance with the IDEA and California law because it was not conducted in accordance with its instructions. *See* Cal. Educ. Code § 56320(b)(3); 20 U.S.C. § 1414(b)(3)(A)(v). Further, California Education Code § 56320(e) and the IDEA provide that "no single measure or assessment [may be] used as the sole criterion . . . for determining an appropriate educational program for the pupil." Cal. Educ. Code § 56320(e); *see*

---

(*Id.* at 5.) The Court finds this a distinction without a difference. Regardless of how the issue is framed, whether the IDEA was in fact procedurally and substantially complied is the central issue, and that is what the ALJ determined and this Court will review.

[6] Plaintiffs argue: "[The TAPS-3 and CTOPP tests] did not assess the auditory processing deficit itself and therefore did not establish the type of auditory disorder, the environments in which the disorder present[s] [itself], what needs were caused by the auditory disorder, etc." (MSJ at 10.)

[7] Plaintiffs also submit the additional inadmissible declaration of Ms. Martin to further support this contention. Even if the Court were to consider this evidence, however, it would not change the Court's conclusion as explained below.

*also* 20 U.S.C. § 1414(b)(2)(B).  Thus, Plaintiffs contend that, even assuming the CTOPP adequately assessed APD, because the TAPS-3 test was inadequately administered and the District cannot properly rely on just the CTOPP to assess Student's needs, the IDEA and state law were not procedurally complied with on this basis alone.  (MSJ at 13-14.)

The Court finds this argument without merit.  Even if Ms. Lazerson's and other testimony was sufficient to establish that the TAPS-3 was not performed in accordance with its instructions, many more assessment than just the TAPS-3 and the CTOPP were performed and utilized in assessing Students' eligibility and services, as well as observation of the student, parental input, and review of the Student's records.  (*See* AR at 886 ¶ 27, 887 ¶ 30, 896 ¶ 6.)   Thus, the Court does not find procedural noncompliance on this ground.

Plaintiffs also cite to administrative decisions indicating that APD must be assessed by an audiologist once the existence of an APD is identified.  To be sure, some administrative decisions have found that only audiologists, and not speech language pathologists, are qualified to diagnose an APD.  *See, e.g., Student v. Buena Park Elementary Sch. Dist.*, OAH Case No. N2005100530 (Aug. 28, 2006); *Student v. San Francisco Unified Sch. Dist.*, OAH Case No. 2006070837 at 11-12, ¶¶ 40-42 (Jan. 26 2007).  In *Buena Park*, the ALJ found that "[t]he evidence adduced by both parties established that an auditory processing disorder (APD) can only be diagnosed by a licensed audiologist."  (*Id.* at 9, ¶ 34.)  The speech language pathologist in that case "understood that she was not qualified to diagnose an APD."  (*Id.*)  The ALJ found that because the District failed to provide an auditory processing assessment by a licensed audiologist though the existence of an APD had been identified, the District failed to conduct an assessment in all areas of suspected disability.  (*See id.*; *see also id.* at 20-21.)  Accordingly, "due to the District's failure to timely assess Student's auditory processing function . . . needs," the ALJ found that the student's IEP was inadequate and did not "confer an educational benefit on student" and, as such, "the District did not offer a FAPE."  (*Id.* at 22.)

However, as conceded at oral argument, these administrative decisions are of limited persuasive value to this Court and there is no persuasive authority supporting that an audiologist *must* conduct an assessment of a Student's identified APD in order to comply with the IDEA or

California law in all circumstances where an APD has been identified. Accordingly, the administrative decisions cited above and other decisions cited by Plaintiff evaluating compliance with the IDEA under different circumstances and evaluating different disabilities and IEP programs are of little value to this Court. Instead, after a careful and thorough review of the evidence, the ALJ in this instance determined that the assessments performed were sufficient to comply with the IDEA and an assessment performed by an audiologist was not required.[8] The Court, exercising its discretion, gives due weight to the ALJ's findings in this case. *See Rowley*, 458 U.S. at 206. Thus, the Court finds that the District procedurally complied with the IDEA and relevant state law in this case.

## II.  Loss of Educational Opportunity

Courts "have held, more often than not, that an IDEA procedural violation denied the child a FAPE." *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 940 (9th Cir. 2007). However, the Ninth Circuit has also held that a "child is denied a FAPE only when the procedural violation 'result[s] in the loss of educational opportunity or seriously infringe[s] the parents' opportunity to participate in the IEP formation process." *R.B.*, 496 F.3d at 938 (quoting *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992)); *see also Amanda J.*, 267 F.3d at 892; *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990). In such cases, an "IDEA procedural error may be held harmless." *R.B.*, 496 F.3d at 938 (quoting *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 652 (9th Cir. 2005) (Gould, J., concurring)). "Therefore, not all procedural violations deny the child a FAPE." *Id.* In this case, even if the Court were to find a

---

[8] Specifically, the ALJ determined:

> Student asserts, based upon the testimony of his experts Nancy Lazerson and Diane Schloyer, that a diagnosis of auditory processing disorder cannot be made without an audiological evaluation and that an audiological evaluation was required here. According to the credible testimony of Schloyer and Lazerson, auditory processing can have both a language deficit component and an auditory component. Sometimes the two components overlap in a student, but overlap is not necessary for a diagnosis of auditory processing disorder. While Schloyer and Lazerson are correct in both instances the fact remains that District is not charged with making a diagnosis of auditory processing disorder. Instead, District's obligation under federal and state law is to assess Student in all areas of suspected disability, which it did, and to ascertain Student's needs. . . . District did not deny Student a FAPE when it failed to obtain an audiological assessment.

(AR at 986-97).

1  procedural violation (which it does not), the Court would nevertheless find in favor of the District
2  because there is no evidence that any procedural noncompliance resulted in the "loss of
3  educational opportunity or seriously infringed the parents' opportunity to participate in the IEP
4  formation process." *See R.B.,* 496 F.3d at 928.

5  First, Plaintiffs generally contend that Students' parents were denied an opportunity to
6  participate in the IEP process because any participation is meaningless without an audiological
7  assessment. This is not supported by the evidence. Student's parents were at the IEP team
8  meetings, participated in the meetings, and also hired Dr. Frampton to speak for them and further
9  provide meaningful participation in the IEP process. The lack of an audiological assessment does
10 not support the contention that this procedural noncompliance "seriously infringed the parents'
11 opportunity to participate in the IEP formation process." *R.B.,* 496 F.3d at 928.

12 Plaintiffs also contend that Student lost educational opportunity because Student's IEP did
13 not include some of the methods and accommodations suggested by Dr. Schloyer in her report.
14 Dr. Schloyer's report (AR at 1280) contains various recommendations to address Student's
15 particular needs, many of which were not contained in the District's IEP. (*See* AR 1284-85; *see*
16 *also* AR at 444-47.) Plaintiffs contend, therefore, that the District's failure to provide or consider
17 the services and equipment recommended by Dr. Schloyer automatically illustrates that Student
18 was deprived of educational benefit and opportunity. The District did not call an audiologist to
19 contradict Dr. Schloyer's testimony. Instead, the District relied on the testimony of Ms. Williams,
20 a speech and language pathologist, who testified that Student's needs were properly met through
21 other modifications and accommodations as set forth in the IEP. (*See* AR at 840.)

22 The District further argues that despite Dr. Schloyer's report, there is no evidence that
23 Student lost educational opportunity. The District first discredits Dr. Schloyer's report on its face
24 because Dr. Schloyer did not observe Student in the District setting and did not speak to any of
25 Student's teachers in preparing her report. Moreover, Dr. Schloyer admitted that she did not know
26 what services and placements were offered by the District and therefore could not opine on their
27 appropriateness or whether it deprived Student of an educational opportunity. (AR at 352-53.)
28 The Court finds this lack of testimony from Dr. Schloyer highly significant.

Moreover, Plaintiffs focus on one device as an example of what benefits Student was

deprived of and which, in turn, purportedly constitutes a loss of education opportunity—an FM auditory device. This device was recommended by Dr. Schloyer as one of many devices or services which could address Student's audiological needs. (*See* MSJ at 20; AR at 1284.) However, this device was also not provided by the private placement. (AR at 464.) Plaintiffs contend that the environment at the private placement differed from the District placement rendering the FM device unnecessary. This argument, however, is undermined by the fact that Dr. Schloyer recommended this device without having observed Student in the District placement, despite the environment of the placements being essential to whether failure to provide such a device created a "loss of educational opportunity."

Furthermore, the District persuasively sets forth why the other witnesses produced by Plaintiffs do not sufficiently establish a loss of educational opportunity, especially in light of the ALJ's determinations. Dr. Frampton testified that the IEP and placements offered by the District were inappropriate. However, Dr. Frampton did not produce any report of her assessment and did not consult with the Student's teachers or observe him in the classroom setting. (AR at 237-39.) Further, Dr. Frampton testified that they did not provide the progress report from Student's private placement unless the District agreed to pay for the placement. (AR at 315-16.) Dr. Frampton's testimony, therefore, is undermined by the lack of supporting evidence and her position as Student's advocate.

Dr. Lazerson was called to testify that Student should have been referred to an audiologist. (*See* AR at 162-63.) However, Dr. Lazerson spoke in general terms and did not know Student, had not assessed student, and never observed Student. (AR at 213.) Dr. Lazerson was solely "hired to review [Student's] records and see if there was an indication of a specific area that was not assessed." (*Id.* at 215.) This, however, related to whether the District procedurally complied with the IDEA and California law, which is discussed above, and is only remotely related to whether the District deprived Student of an educational opportunity. The same goes for Dr. Prinze, who was called to testify as to the Student's progress in the placement provided by District, who did not assess Student. Instead, he reviewed and opined only on the basis of objective data. (*Id.* at 52, 56, 57, 110, 115-17.) In fact, Dr. Prinze testified that, as someone who had just reviewed the records, he was not "in a better position to judge a student's progress than a teacher who has spent

1  hours with the student every day for a whole school year[.]" (*Id.* at 117.)  Accordingly, Dr.
2  Prinze's testimony also does not sufficiently establish that Student was specifically deprived of an
3  educational opportunity or benefit based on procedural noncompliance.
4        Accordingly, the Court finds that Student was not denied a FAPE because, even assuming
5  *arguendo* that a procedural violation occurred, the evidence does not support that any
6  noncompliance "resulted in the loss of educational opportunity or seriously infringe[] the parents'
7  opportunity to participate in the IEP formation process."  *See R.B.*, 496 F.3d at 938; *see also*
8  *Amanda J.*, 267 F.3d at 892.  Further, as discussed below, not only does the Court find that there is
9  insufficient evidence showing a loss of educational opportunity or benefit, the Court also finds that
10  educational benefit was in fact conferred.

11  **III.    Substantive Prong**

12        Having found that the District complied with the procedural requirements of the IDEA, its
13  regulations, and state law, the Court must now address whether the IEP was substantively
14  appropriate.  This substantive prong determines whether "the individualized education program
15  developed through the Act's procedures [was] reasonably calculated to enable the child to receive
16  educational benefits."  *Amanda J.,* 267 F.3d at 890 (quoting *Rowley*, 458 U.S. at 206-07.)
17        The District has offered a "free appropriate public education if the program (1) address the
18  child's unique needs, (2) provides adequate support services so the child can take advantage of the
19  educational opportunities, and (3) is in accord with the individualized education program."
20  *Capistrano*, 59 F.3d at 893 (citing *Rowley*, 458 U.S. at 188-89); *see also Katherine G. ex rel.*
21  *Cynthia G. v. Kentfield Sch. Dist.,* 261 F. Supp. 2d 1159, 1171-72 (N.D. Cal. 2003).  "Denial of [a]
22  FAPE can also occur . . . where the child's placement does not comply with the IDEA's
23  requirement that it be in the least restrictive environment."  *Katherine G.,* 261 F. Supp. 2d at 1171-
24  72 & n.12.
25        Only the first two factors are at issue before this Court—whether the program addressed
26  Student's unique needs and whether the program adequately conferred educational benefit.  (*See*
27  MSJ at 35.)  Plaintiffs allege that "the IEP failed to meet Student's unique needs" and "was not
28  designed to provide meaningful benefit," as evidenced by the tests performed to evaluate Student's
    progress, his report card, and his progress reports.  (*See* MSJ at 24-32.)  The District contends in

opposition that the IEP adequately addressed Student's weaknesses and unique needs and that Student made progress in all areas. (*See* Opp. to MSJ at 20-29.) As explained below, the Court finds that Plaintiffs have not adequately established that the FAPE and IEP offered substantively violated the IDEA or state law.

The ALJ found:

> District offered Student a FAPE for the period of May 7, 2007 through and including the 2008-2009 school. Both the May 2007 IEP and the June/September IEP were designed to address Student's unique educational needs and to provide a meaningful educational benefit to Student in the least restrictive environment. Both IEPs identified and addressed Student's then-present levels of performance and provided Student with measurable goals and appropriate related services to address his unique educational needs.

(AR at 901-01.)[9]

Plaintiffs contend that the IEP failed to specifically address Student's *auditory processing* needs that were found by Dr. Schloyer: "None of [the] testimony about benefits Student might have received in any way refuted the clear and specific testimony that his auditory processing needs [were] neither assessed nor addressed." (MSJ at 24-25.) This argument relies entirely on the theory that Student's auditory needs were never assessed, and thus the IEP could not logically have met those needs. There are two problems with this argument. First, as explained above, there is not sufficient support for the proposition that Student's audiological processing needs were not properly assessed by the IEP team. Second, even assuming that the needs were not assessed, Dr. Schloyer's testimony is not sufficient to establish that the IEP did not address those needs, considering Dr. Schloyer had not even seen the IEP. The only evidence is that Dr. Schloyer made recommendations that *could* address Student's needs and that some of these recommendations were not provided for Student by the District. Dr. Schloyer does not testify that the IEP that *was* provided by the District did not address Student's audiological processing needs.

Similarly, Plaintiffs contend that the IEP was not designed to provide meaningful educational benefit. "This is based on the fact that Student's progress was minimal at best in his areas of needs during the previous year under an IEP which was essentially identical to the IEP in

---

[9] The ALJ also determined "Student was placed in the least restrictive environment available to implement his IEPs" and that "Student . . . failed to meet his burden of showing that the District's provision of pull-out RSP and related services denied him a FAPE" because the evidence did not support that the pull-out services were disruptive to student. (AR at 900.)

question. If the District's IEP did not accomplish very much in the previous year, it is likely that an identical IEP would not have accomplished very much in the following year." (MSJ at 26.)

The Court, however, finds the evidence supports the ALJ's findings that the IEP offered did address Student's audiological needs and provided meaningful benefit, especially given due deference to the ALJ's findings to that effect.

> As accommodations and modifications, the May 8, 2007 IEP provided extra time and supervised breaks for district and state testing, use of word processing software on writing test[s], simplification or clarification of test direction on state and district test[s], adapted paper, graphic organizers for writing, graph paper for math as needed, sensory breaks as needed, preferential seating, extra time on test and assignments as needed and the use of a word processor.

(Opp. to MSJ at 25; *see also* AR at 1343-46.) Objective tests and progress reports help illustrate whether these accommodations addressed student's needs and provided meaningful benefit. Such tests include the STAR test, the MAP test, Student's report card, and progress reports.

At the administrative hearing, Ms. Robinson testified as to the Measure of Academic Progress ("MAP") test and California Standardized Testing and Reporting ("STAR") testing. The MAP tests measures instructional level, and ranks the students high, average or low according to national normed percentile scores. (*See* AR at 29-30.) Ms. Robinson described the STAR tests as a "criterion reference test based on California State Standards. So a child needs to reach a specific level in order to be meeting grade-level standards. It's an achievement test. It's a summative test that marks a child's achievement at a given point in time." (*Id.* at 33.) Ms. Robinson testified that the MAP test indicated that Student had shown some progress in some subtests. (*Id.* at 30-31.) She also testified that Student's STAR scores showed "tremendous growth" from Fall to Spring of Student's fourth grade year, which is the year prior to Plaintiffs' private placement, in the areas of math, reading, and language usage. (*Id.* at 44-47.)

Plaintiffs, however, assert that Student fell further behind the "proficient" level as compared to the normed students in the fourth grade year as compared to the third grade year on the three categories allegedly affected by APD. (*See* MSJ at 26-29.) Specifically, Student's witness Dr. Prinz opined that, when comparing the "gap" between student and the "proficient" average, normed student, the "gap" widened between Student's third grade and fourth grade in the three areas known to be affected by auditory processing issues—word analysis, vocabulary and

literary response and analysis. (*See generally* AR at 76-91; *see also id.* at 91.)  Dr. Schloyer, however, said that the scores between the third and fourth grade are not comparable because the normed students are a different group each year. (*See id.* at 36-40.)  Thus, there is somewhat conflicting testimony as to the validity of comparing the STAR testing between the third grade and fourth grade in order to measure progress.

The ALJ, however, appropriately addressed this conflict, finding:

> On balance, Robinson's testimony was more persuasive. She had practical expearance with the MAP test and an in-depth understanding of the MAP test, knowledge of Student, and was candid about Student's performance on the STAR test.  Robinson understood the testing intricacies and weaknesses of the MAP testing and the STAR test as it applied to elementary school students, and elementary school curriculum.  Prinz, on the other hand had no knowldge of MAP testing except for what he research on the internet and his school experience was with high school students.

(AR at 891.)  The Court gives due weight to this analysis and agrees.[10]

Furthermore, the District's other witnesses support the position that Student was making progress and therefore must have received some meaningful educational benefit, as observed by the witnesses.  For example, Ms. Hattar, Student's fourth grade general education teacher at the District placement, provided specific indications of Student's progress, such as reading harder books, more participation in literature circle groups, and writing paragraphs instead of sentences with errors. (AR at 653-54.)  Ms. Hattar also undermines Plaintiffs' contentions that Student's report card indicate a lack of progress. (*See* MSJ at 30; *see also* AR at 1199 (Fourth Grade Report Card).)  To be sure, Student received "1"s in reading and writing throughout the year, which indicates that Student was working below standard. (*See* AR at 1199.)  But, Ms. Hattar testified that this does not indicate a lack of progress toward's Student's IEP goals, but that Student falls below State standards. (AR at 668-70.)  Ms. Hattar also testified that the MAP test, which Ms. Hattar administered to Student, indicated a significant amount of growth; more growth than would be expected of a student. (*Id.* at 656-60.)

Ms. Meyers, Student's resource specialist teacher, also testified as to Student's progress in the fourth grade.  Student participated in a resource specialist program ("RSP") for math, writing/spelling and reading, and that Student did not reach all of his IEP goals, but did make

---

[10] Moreover, the Court believes that credibility findings such as this one should especially be given due weight unless the evidence clearly contradicts that determination, which it does not.

some progress towards all of them. (*See* AR at 706-23.) This testimony undermines Plaintiffs' position that the Goals Progress Report (AR at 1333), which shows that Student failed to meet six of his 11 goals, indicates a lack of meaningful benefit. Further, the ALJ noted that the June/September IEP was modified to specifically address these unmet goals. (*Id.* at 900.)

The Court, therefore, agrees with the ALJ and finds that Plaintiffs have not sufficiently established by a preponderance of the evidence that the IEP did not address Student's needs and/or that Student did not receive "meaningful benefit" or make "meaningful progress" towards his goals in violation of the IDEA's substantive prong. To be sure, Student did not meet all his goals or reach the level of an average, proficient student according to the testing, his report card, and Goals Progress Report. That, however, does not indicate that "meaningful progress" was not made. In fact, all the District witnesses who directly observed Student indicated that progress *had* been made. In contrast, all of Plaintiffs' witnesses who opined as to Student's lack of progress had not directly observed Student in the District setting. Furthermore, the ALJ found:

> The small setting and individualized instruction offered in the general education setting supported by RSP services was precisely what Student needed for his auditory processing disorder. Although the IEP team did not have access to Schloyer's report, the RSP services offered by the IEP team were supported, in part, by Student's own expert audiologist. Audiologist Schloyer recommended that Student receive instruction in a small group setting and be taught organizational and reading strategies.

(AR at 900.) Accordingly, the Court finds that the District substantively complied with the IDEA, its regulations and state law.

## CONCLUSION

For those reasons, the Court exercises its discretion, affords due weight to the ALJ's thorough determinations and finds that the District prevails on all issues. Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment in its entirety.

IT IS SO ORDERED.

DATED: July 12, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge